## Louisville & Nashville Railroad Company v. Creech.

(Decided February 8, 1927.)

### Appeal from Breathitt Circuit Court.

1. **False Imprisonment—Conviction in Federal Court, After Arrest by Railroad Detective, for Possessing Liquor, is Not Conclusive on Question of Legality of Arrest.—**In prosecution for false arrest by railroad detective for possession of liquor, the fact of conviction in federal court on such charge is not conclusive on question

of legality of arrest, in view of status of state officer before federal courts.

2. False Imprisonment—Instructions as to Railroad Detective's Right to Arrest for Possessing Liquor Held Erroneous.—In action for false arrest by railroad detective for possessing liquor, instructions that officers had no right to arrest unless plaintiff was drunk in their presence, or unless he was seen or known by them or one of them to be in possession of or transporting liquor, held erroneous, arrest being warranted if officers knew or had reasonable grounds to believe, and in good faith did believe, that plaintiff was unlawfully possessing or transporting liquor.

3. False Imprisonment—Courts are Liberal in Construing Rights of Officer to Arrest, Without Warrant, for Offense Committed in his Presence.—In civil actions for false arrest by a public officer, where the defense is justification, courts are liberal in construing rights of officer to arrest, without warrant, for offense committed in his presence.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN, HUNT, NORTHCUTT & BUSH, S. C. LANDRUM and O. H. POLLARD for appellant.

E. C. HYDEN for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

In this action for false arrest, Enoch Creech recovered a judgment against the Louisville & Nashville Railroad Company for $500.00. The company appeals.

The facts are these: Appellee was a carpenter in the employ of the railroad company. On the 17th of September, 1922, he and a companion, Robert Tharp, spent the night with a friend at Wolf Creek in Breathitt county. On the following morning, they with two young ladies boarded the train at Wolf Creek. Appellee and his companion intended to leave the train at Jackson, the destination of the other couple being farther on. Tharp and his companion took a seat a short distance from the front of the car on the left side of the aisle facing the engine. Creech reversed the seat directly in front of them and he and his companion occupied this seat, with their backs to the engine, Creech being next to the aisle and the two couples facing each other and engaging in general conversation. Two private policemen were riding in the car; one of these, Paul Collier, was seated to the rear of Tharp on the same side of the aisle and the other, A. S.

Sizemore, was on the opposite side of the aisle and a few seats to the rear. Sizemore claims that Creech went to the toilet, and that on his return he smelled a strong odor of whiskey, and that the conductor complained to him of this fact, and both he and Collier say that as the train reached Jackson, Creech arose and while standing in the aisle leaned over the seat talking to one of the young ladies; that this movement of his body raised his coat and exposed to their view a bottle in and extending above his hip pocket; they followed him and the young lady out of the car and arrested him on the railway platform for having intoxicating liquor in his possession, and upon search found a partially filled bottle of moonshine whiskey in his hip pocket. He was turned over to the local authorities and his trial set for the following day. In the meantime the matter was taken up by the federal commissioner, and Creech and Sizemore did not appear at the trial in the local court and the prosecution was dismissed. However, he was tried in the federal court and upon a plea of guilty was convicted of the offense charged at the time of the arrest. Sizemore explains his absence from the trial in the local court by the fact that Creech was an employee of the company and he wanted to be as light upon him as he could; that the punishment in the state court carried imprisonment while that in the federal court might be, and was, a fine only. In contradiction of his statement other witnesses said that he told them that he had arrested Creech without a warrant and thought it wrongful, and therefore did not appear against him.

Appellee admits possession of the liquor, but says that he was aware of the presence of the officers on the train and was discreet in his actions; that he did not go to the toilet or take a drink that morning, and that he did not arise or stand in the aisle leaning over the seat. In this he is corroborated by Collier, who testifies that there was no odor of liquor on appellee's breath.

It is urged, first, that the conviction in the federal court shows appellee's guilt and is conclusive proof of reasonable cause for the arrest, and that therefore a peremptory instruction should have been given. It has been held that, in a suit for false imprisonment against an officer, a judgment of conviction of the offense charged is conclusive as to the reasonableness of the charge and constitutes a justifiable defense. Lou. Ry. Co. v. Hutti, 141

Ky. 512; Waddle v. Wilson, 164 Ky. 228; Holtman v. Bullock, 142 Ky. 335; Duerr v. K. & I. Bridge Co., 132 Ky. 228.

Unquestionably the conviction for the offense charged is conclusive as to probable cause for the institution of the prosecution and constitutes a complete defense to a suit for malicious prosecution. Where the arrest is for an offense committed in the officer's presence it also establishes the fact that such offense was committed; but in justifying the officer in making the arrest without a warrant, perhaps it should be applied with more caution in cases where the offense is concealed and the evidence is developed by a search subsequent to the arrest. If such suit is pending in the state court and a judgment for conviction is also rendered in that court it might be presumed that the right of arrest was determined in passing upon the admissibility of the evidence, and upon the trial for false imprisonment the court could presume that the arrest was legal. But that presumption could hardly apply to a conviction for a violation of the liquor law in the federal court, for while the same rules as to the admissibility of the evidence procured by unlawful search and seizure are enforced in both state and federal courts, the federal courts do not recognize the state officers as officials, but treat their evidence as that of a private citizen, hence in a trial in that tribunal the reasonableness of the search or seizure by a state official is not considered, and it cannot be held that the judgment of such court is conclusive as to the legality of the arrest, hence the judgment of the federal court did not authorize a peremptory instruction.

(2) The court instructed the jury, in substance, that the officers had no right to arrest the plaintiff unless he was drunk in their presence or unless he was seen or known by them or one of them to be in possession of or transporting intoxicating liquor, and that if the jury believed from the evidence that plaintiff was not drunk, or was not known by the officers or either of them to be guilty of possessing or transporting intoxicating liquor at the time of the arrest, they should find for the plaintiff. In the converse they were told that, if the officers or either of them saw whiskey in the possession of plaintiff, or knew that he was transporting same, and arrested him on either of said charges, they then had a right to

search his person and had a right to arrest him, and that the verdict should be for the defendant. These instructions were erroneous. In civil actions for false arrest by a public officer where the defense is justification this court has liberally construed the rights of the officer in making an arrest without a warrant for an offense committed in his presence.

As said in Weaver, etc. v. McGovern, 122 Ky. 1: "The rule now seems to be that a peace officer can arrest a person without a warrant, when the person is committing an offense in his presence, or when he has reasonable grounds for and does believe in good faith that the person is commiting an offense in his presence." This case followed and approved Easton v. Com., 82 S. W. 996, and is quoted with approval in Com. v. Reed, 208 Ky. 590, and, so far as we are advised, there is no dissent therefrom in any of the opinions in suits for false imprisonment. True, in cases where there is an objection to the admissibility of evidence procured by an illegal arrest and subsequent seizure, the code provisions authorizing arrests without a warrant have been construed with more particularity and perhaps with less liberality in upholding the legality of such arrests. The difference in the construction seems to arise largely from the fact that in the latter class of cases the court passing upon the admissibility of the evidence determines the facts, and as each case presents a different state of facts the language used necessarily varies. See Ingle v. Com., 204 Ky. 518; Elswick v. Com., 202 Ky. 703; Spires v. Com., 207 Ky. 460, and cases cited therein. However that may be, the rule is too well established in this class of cases to depart therefrom, and if, under the authorities quoted, Sizemore or Collier knew or had reasonable grounds to believe and in good faith did believe that Creech at the time and place was unlawfully possessing or transporting intoxicating liquor, they are not liable for arresting him without a warrant, and this principle should have been embodied in the instructions.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.